## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---

|  |  |  |
|---|---|---|
| TRACEY L. PRIDGEN, | : | |
|  | : | Civil Action No. |
| Plaintiff, | : | 09-cv-583 (NLH)(AMD) |
|  | : | |
| v. | : | **OPINION** |
|  | : | |
| GREEN VALLEY SNF LLC, t/a | : | |
| PINNACLE REHABILITATION CENTER, | : | |
| a Delaware limited liability | : | |
| company, | : | |
|  | : | |
| Defendant. | : | |

---

**APPEARANCES**:

Noel E. Primos, Esquire
and
William D. Fletcher, Jr., Esquire
Schmittinger & Rodriguez, PA
414 S. State Street
P.O. Box 497
Dover, DE 19903
*Attorneys for Plaintiff Tracey L. Pridgen*

Raymond H. Lemisch, Esquire
Benesch Friedlander Coplan & Aronoff
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
*Attorney for Defendant Green Valley SNF LLC*


**HILLMAN, District Judge**

Plaintiff, Tracey L. Pridgen, filed suit against Defendant, Green Valley SNF LLC, or Pinnacle Rehabilitation Center, alleging that Defendant discriminated against her on the basis of her race, in violation of federal law.  Defendant now moves for summary judgment against Pridgen's claims.

For the reasons expressed below, Defendant's Motion for Summary Judgment will be granted.

## I.  JURISDICTION

Plaintiff has brought forth claims under federal law.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331.

## II.  BACKGROUND

On or around September 18, 2007, Pridgen, an African-American female, commenced her employment as a certified nursing assistant ("CNA") with Defendant at a skilled nursing facility in Smyrna, Delaware.  In or around June or July of 2008, however, Pridgen was transferred to another unit within the facility by Assistant Director of Nursing, Debbie Janelle, a Caucasian female.  The impetus for the transfer was an allegation by Pridgen's unit manager, Debbie Rockweiller, also a Caucasian female, that Pridgen had acted rudely toward her.  Pridgen denies any wrongdoing.  In or around July 2008, Janelle issued a "written warning" to Pridgen because she had called out of work three times in a span of forty-five days, in violation of employment policy.  According to Pridgen, she missed work because of the serious illness and death of her brother, and to validate her absences, she provided Janelle with documentation evincing her brother's health issues.

Weeks later, Pridgen was again disciplined by Janelle with a

2

"final discipline" warning for eating behind the nurses' station,
an activity prohibited by the facility and for which Pridgen had
been issued a verbal warning days before.  Kira Wood, Pridgen's
unit manager and a Caucasian woman, initiated the complaint.
Pridgen denies that she ate in that location, but adds that no
other employees who have eaten behind the station or in other
prohibited areas were ever disciplined.

Finally, on September 22, 2008, Pridgen met with Janelle,
among other personnel, who informed her that she was being
terminated from her employment.  Janelle explained that, on
September 16th, Pridgen failed to document a resident's bowel
movement.  Pridgen's alleged negligence was reported by Lona
Minkler, a Caucasian CNA, who stated that, on September 17th, the
resident smelled like she had had a bowel movement.  Further,
according to Defendant, Janelle also explained to Pridgen that
she was being terminated because she ate in a resident's room, as
witnessed by Wood.[1]  Pridgen told Janelle that she was not tasked

---

[1] There is conflicting testimony over whether Pridgen, during
the September 22nd meeting, was given any reason for her
termination other than the undocumented bowel movement.  For
example, at her deposition, Pridgen denied that Janelle cited the
impermissible eating in a resident's room as a reason for her
termination during the September 22nd meeting.  Pridgen also
recalled that the sentence pertaining to the impermissible eating
did not appear on her "Employee Disciplinary Action" form at the
meeting, but was later added.  However, when specifically asked
during her deposition about Pridgen's alleged impermissible
eating, Regina Fairbanks, a human resources representative for
Defendant who also attended the termination meeting, acknowledged
that she thought the topic was discussed during the meeting.

with caring for that resident on September 16th, and thus was not responsible for documenting the patient's status.  Later, Janelle clarified that the date of the incident was actually September 17th.[2]  In response to the allegations and her termination, Pridgen filed a grievance, which ultimately was unsuccessful.

In light of the alleged wrongdoing, Pridgen filed a claim for discrimination on the basis of race with the Equal Employment Opportunity Commission ("EEOC").  In response, the EEOC issued a right to sue notice to Pridgen.  In early August 2009, Pridgen initiated the present suit in this Court.  Soon thereafter, she amended her complaint.  Pridgen alleges that the reasons for her termination were pretextual and that, in fact, she had suffered discrimination by virtue of her race.  Because of its actions and those of its agents, Pridgen surmises, Defendant has violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.[3]  On or around July 15, 2010, Defendant moved

---

[2] The change in date of the alleged undocumented bowel movement also was modified on the Employee Disciplinary Action form.  At the termination meeting on September 22nd, the date listed for the incident was September 16th.  When a copy of the document was later produced, the date of the offense read September 17th.

[3] In September 2009, Defendant moved to dismiss Pridgen's third cause of action alleging the breach of the implied covenant of good faith and fair dealing.  The parties subsequently agreed to the dismissal of that claim and withdrawal of Defendant's Motion to Dismiss.  On or around September 22, 2009, the Court ordered the withdrawal of the good faith claim and denied Defendant's motion as moot.

for summary judgment against Pridgen's claims.

## III. DISCUSSION

### A.    Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp.,

5

477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

   B.   **Race Discrimination**

   Defendant argues that Pridgen was terminated for legitimate, non-discriminatory reasons and that no genuine issue of material fact suggests otherwise.  By Defendant's estimation, the record demonstrates that Pridgen was terminated for reasons unrelated to race and belies her claims of pretext.

   Pridgen counters that Defendant's proffered reasons for her termination, specifically her alleged failure to document a resident's bowel movement and eating in a resident's room, were pretextual.  According to Pridgen, genuine issues of material fact exist to enable a fact-finder to disbelieve Defendant's reasons and to conclude that they simply mask invidious discrimination against Pridgen.

   Under Title VII, it is unlawful for an employer "to fail or

6

refuse to hire or to discharge any individual, or otherwise to
discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or
national origin."  42 U.S.C. § 2000e-2(a)(1).  To prevail on a
claim of discriminatory discharge -- the apparent heart of
Pridgen's case -- a plaintiff first must present a prima facie
cause of action with the following elements: (1) the plaintiff
"is a member of a protected class, (2) she was qualified for the
position, (3) she was discharged, and (4) the position was
ultimately filled by a person not of the protected class."
Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1066 n.5
(3d Cir. 1996).  Should the plaintiff carry this initial burden,
the burden of production shifts to the defendant-employer to set
forth a legitimate, non-discriminatory reason for the adverse
action taken against the plaintiff.  Fuentes v. Perskie, 32 F.3d
759, 763 (3d Cir. 1994).

Once the defendant does so, "the burden of production
rebounds to the plaintiff, who must now show by a preponderance
of the evidence that the employer's explanation is pretextual
(thus meeting the plaintiff's burden of persuasion)."  Id.
Accordingly,

> [t]his basic framework under Title VII
> illustrates that, to defeat summary judgment
> when the defendant answers the plaintiff's
> prima facie case with legitimate, non-

> discriminatory reasons for its action, the
> plaintiff must point to some evidence, direct
> or circumstantial, from which a factfinder
> could reasonably either (1) disbelieve the
> employer's articulated legitimate reasons; or
> (2) believe that an invidious discriminatory
> reason was more likely than not a motivating
> or determinative cause of the adverse
> employment action.

Id. at 764.  In the end, "[t]he plaintiff must show not merely
that the employer's proffered reason was wrong, but that it was
so plainly wrong that it cannot have been the employer's real
reason." Atkinson v. Lafayette College, 460 F.3d 447, 454 (3d
Cir. 2006) (citation and internal quotation marks omitted).  "The
question is not whether the employer made the best, or even a
sound, business decision; it is whether the real reason is
discrimination." Id. (citation, internal quotation marks, and
brackets omitted).[4]

   For purposes of this Opinion, the Court accepts, without
deciding, that Pridgen has satisfied her burden of presenting a

----

[4] The Third Circuit Court of Appeals has observed: "We have
previously applied the tests used to evaluate employment
discrimination claims brought under Title VII . . . to employment
discrimination claims brought under [42 U.S.C.] § 1981, since the
substantive elements of a claim under section 1981 are generally
identical to the elements of an employment discrimination claim
under Title VII." Anderson v. Wachovia Mortg. Corp., 621 F.3d
261, 2010 U.S. App. LEXIS 19071, at *11 (3d Cir. 2010) (citation
and internal quotation marks omitted).  The parties seem to
tacitly agree that Title VII and Section 1981 claims are governed
by the same standards and analyses, as both parties focus their
arguments exclusively on Title VII.  Accordingly, the Court will
address Pridgen's Title VII claim with the understanding that the
same analysis and conclusions also apply to the Section 1981
claim.

8

prima facie cause of action.[5]  Further, Defendant certainly has
articulated a legitimate, non-discriminatory reason for Pridgen's
termination.  Defendant proffers evidence to show that Pridgen
was terminated for several violations of Defendant's progressive
disciplinary policy.  In particular, documentation and deposition
testimony set forth by Defendant demonstrates that Pridgen's
disciplinary violations culminated in her failure to document a
resident's bowel movement and her impermissible consumption of
food in a resident's room.  It is undisputed that Pridgen's
employer informed her that she was being terminated because she
did not document a resident's bowel movement.  Pridgen, herself,
admits as much in her deposition testimony.  In addition, the
"Employee Disciplinary Action" form, specifying the grounds for
Pridgen's termination, also noted that she had been eating in a
resident's room while the resident was also there.  Pridgen
admitted that she ate a potato chip in a resident's room.

      The crux of this matter, therefore, involves the third prong
of the burden-shifting framework: whether the plaintiff can
demonstrate that the defendant's proffered reasons for
terminating her constitute mere pretext for race discrimination.
To satisfy her burden, Pridgen must adduce evidence that creates
a genuine issue of material fact as to the legitimacy of

---

      [5] Moreover, Defendant concedes that Pridgen has established a
prima facie case of race discrimination.

Defendant's proffered reasons for her termination.

First, with respect to the botched documentation of a
resident's bowel movement, Pridgen points to the discrepancy in
the dates of the alleged negligence.  At the meeting on September
22, 2008, Janelle explained to Pridgen that she was being
terminated because she did not document a resident's bowel
movement on September 16, 2008.  The Employee Disciplinary Action
form memorializing Pridgen's infraction specified that the date
of the infraction was September 16th.  Pridgen, however,
maintained that she cared for the resident at issue on September
17th, not September 16th, and on September 17th, the resident did
not have a bowel movement.  In support of her claim, Pridgen
points out that whoever cared for the resident on September 16th
never documented whether the resident had a bowel movement on
that day; the relevant portion of the documentation is silent as
to that information.  On the contrary, for September 17th,
Pridgen documented that the resident did not have a bowel
movement that day.[6]

This discrepancy made clear, Janelle ultimately changed the
date on the Employee Disciplinary Action form, scratching out the

---

[6] Irene Lofland, a CNA/restorative aide and union president,
testified during her deposition that Pridgen maintained
throughout the September 22nd meeting that she had not cared for
the resident at issue on September 16th.  Through her review of
the records, Lofland confirmed that Pridgen had not been
responsible for the resident on September 16th.

16th and writing the 17th, accompanied by her initials.
Defendant asserts that the date modification followed an
administrative review that confirmed that Pridgen did not care
for the resident on September 16th, but that while the date was a
mistake, she still failed to document a bowel movement
accordingly on September 17th.  Pridgen, on the other hand, seems
to believe that the date modification equates to a factual
fabrication intended to create the appearance that she had been
derelict in her duties when she had not been.  Pridgen emphasizes
that at the termination meeting, Janelle was specially perturbed
that, and ultimately terminated Pridgen because, the records did
not show any documentation for September 16th, the day on which
Pridgen undisputedly did not care for the resident.

     Second, as for the consumption of food in an unauthorized
area, Pridgen presents deposition testimony and sworn statements
claiming that other employees often have eaten in unauthorized
areas, but that only Pridgen has ever been disciplined or
punished for such an impropriety.  For example, during her own
deposition, Pridgen testified that several other employees,
including Wood and Minkler, ate food in unauthorized areas in the
facility, such as behind the nurses' station, in the hallway, in
the residents' dining room, and in front of residents themselves.
Rebecca Perry and Germaine Sutton, former employees with
Defendant, recalled during their respective depositions that

they, too, had witnessed other employees, including Wood,
Minkler, and Regina Fairbanks, a human resources representative,
eating and drinking in unauthorized areas, such as the nurses'
station, residents' rooms, and hallways, and that none of them
was ever disciplined.  Even though some of this misconduct was
brought to the attention of Janelle and Fairbanks, no
disciplinary action was ever taken.

Based on the record, Pridgen has not carried her burden to
demonstrate that her termination for failure to document a bowel
movement was mere pretext for race discrimination.  There are
reasons, such as the discrepancy between Pridgen's work schedule
on September 16th and 17th, why Defendant may have chosen to
second-guess whether Pridgen failed to properly document a
resident's condition.  However, it is undisputed that the
underlying basis for Janelle's decision, and Defendant's
termination of Pridgen, was the report by Minkler that a resident
for whom Pridgen was responsible had had a bowel movement on
September 17th, the day on which Pridgen admittedly cared for the
resident.  Besides her patent denial, Pridgen adduces no evidence
that undermines Janelle's reliance on Minkler's statements.[7]  <u>See</u>

---

[7] Pridgen takes issue with the fact that there is no sworn
testimony or statements, including Minkler's, to prove that the
resident in question actually had a bowel movement on September
17th.  While her point is valid, the significance of Minkler's
written statement is not in its truth, but rather in Janelle's
reliance upon Minkler's observation.  Whether the resident
actually had a bowel movement on September 16th or the 17th, or

Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (noting
that, to survive a motion for summary judgment against a claim of
pretext, plaintiffs must "present evidence contradicting the core
facts put forward by the employer as the legitimate reason for
its decision"); Watson v. SEPTA, 207 F.3d 207, 222 (3d Cir. 2000)
(noting that an employer may "take an adverse employment action
for a reason that is not 'true' in the sense that it is not
objectively correct" so long as the employer honestly and
sincerely believes that its reason is correct).

        Nevertheless, Pridgen scrutinizes the reasonableness of
Janelle's conclusions and the accuracy of Minkler's account.  But
while Pridgen's indignation may be justifiable, a wrong decision
by an employer does not amount to a discriminatory decision.  See
Fuentes, 32 F.3d at 765 ("To discredit the employer's proffered
reason, . . . the plaintiff cannot simply show that the
employer's decision was wrong or mistaken, since the factual
dispute at issue is whether discriminatory animus motivated the
employer, not whether the employer is wise, shrewd, prudent, or
competent.").  Consequently, a jury could find that Defendant's
termination of Pridgen was hasty, unsound, ill-conceived, or
undeserving.  Under the circumstances of this case, however,

_____

another day altogether, does not change the uncontroverted
assertion that Janelle relied on Minkler's report when deciding
to terminate Pridgen.  For that reason, Minkler's statement was
included in Pridgen's personnel file, as explained by Fairbanks
at her deposition.

there is insufficient evidence to enable a jury to disbelieve that Janelle terminated Pridgen pursuant to a progressive disciplinary policy in which Pridgen already had been disciplined or warned on multiple occasions, or, conversely, to believe that discriminatory animus animated Janelle's decision.

Turning to the impermissible eating in an unauthorized area, Pridgen readily admits that she ate a potato chip in a resident's room.  Fairbanks added during her deposition that Pridgen came into her office that same day and confessed that she had eaten a bag of chips and drank a soda in a resident's room.  Concerning the same incident, Irene Lofland, a CNA/restorative aide and union president, also testified that Pridgen admitted her wrongdoing, but Pridgen added that many other employees did the same.  Drawing from this evidence, no genuine issue of material fact exists to dispute the fact that, against Defendant's policy, Pridgen ate in a resident's room in the company of a resident. Her infraction notwithstanding, Pridgen presents evidence to illustrate that, despite being similarly situated and liable for the same types of offenses, none of Defendant's other employees has ever been disciplined or terminated for eating in unauthorized areas, including residents' rooms and in front of residents themselves.

Pridgen's evidence of unfair treatment may carry some weight but for the fact that, aside from Pridgen, neither a Caucasian

nor an African-American employee has been reportedly subject to
any discipline for impermissible eating even though employees of
both races have allegedly committed the same violations.  Pridgen
emphasizes those portions of deposition testimony and other
statements recounting that white employees, such as Wood,
Minkler, and Fairbanks, have eaten in unauthorized areas but were
never punished.  However, as part of her argument, she does not
acknowledge that other black employees committed the same policy
violations and also were not subject to discipline.

During Pridgen's deposition, Defendant's counsel asked her,
in the context of impermissible eating in unauthorized areas: "So
white nurses ate?  Black nurses ate?  No one was disciplined but
you?"  (Def. App. at 344.)  Pridgen affirmed, "Yeah.  No one was
disciplined but me."  (Id.)  Along those lines, Perry also
testified at her deposition that among the nurses that she
observed impermissibly eating, one of them was a black woman.
Likewise, Sutton stated that both white and black employees ate
at times and in places they should not have, and that the
impermissible eating was "generally happening" among the staff.
(Id. at 463).

Taken together, the evidence in the record shows that
Pridgen violated Defendant's policy against eating food in
unauthorized areas, and despite its application to Pridgen, the
policy was not unfairly imposed on only those individuals who

were of the same race as Pridgen or who were otherwise non-white.
In other words, to whatever extent the prohibitive eating policy
may have been rarely enforced, there is simply nothing to suggest
that it was enforced against only minorities or that it, or any
other disciplinary measure, was employed as a means to
discriminate.  On the contrary, any documentation of its
enforcement is limited solely to Pridgen, even though both white
and black employees allegedly violated the policy.[8]  At most,
Pridgen may have a claim that she, herself, was unfairly treated,
but the record belies the notion that any unfair treatment
targeted toward her was grounded in racial animus.  See Sabinson
v. Trs. of Dartmouth College, 542 F.3d 1, 4 (1st Cir. 2008)
("[W]hether or not personal or professional hostility played a
role in the [adverse employment action], federal law does not
protect generally against arbitrary or unfair treatment in
private employment, but only against actions motivated by listed
prejudices such as race . . . .  Discrimination is a form of
unfairness; but not all unfairness is discrimination.").  If
anything, it appears that Pridgen was treated unfavorably in

---

[8] It is worth noting that during her deposition, Pridgen
testified that Yvonne Gillis Fountain, an African-American CNA
and union representative, reported to Fairbanks and Janelle that
Minkler was eating food in an unauthorized area.  In an
affidavit, Fountain denied that she made such a report or that
Minkler's eating was impermissible on that occasion.  According
to Fountain, Minkler's alleged incident occurred on a staff
training day, during which staff may eat in otherwise
unauthorized areas.

comparison to her fellow employees, not that black employees were treated unfavorably in comparison to their white counterparts.

Therefore, Pridgen has not demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reasons for termination to enable a reasonable fact-finder to find those reasons "unworthy of credence."[9]  <u>Fuentes</u>, 32 F.3d at 765 (citation and internal quotation marks omitted).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.  An Order consistent with this Opinion will be entered.


Dated: December 21, 2010          /s/ NOEL L. HILLMAN
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[9] Defendant also argues that Pridgen's request for punitive damages must be denied because the pleadings and record do not support a claim for such relief.  Because the Court grants summary judgment in favor of Defendant on Pridgen's underlying claims, the request for punitive damages is denied by implication.